UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────────────────x

UNITED STATES OF AMERICA,

      -against-                                                                                   04 Cr.1105 (CM)

WARREN J. SCHWARTZ,

            Defendant.
─────────────────────────────────────────────x

## DECISION ON DEFENDANT'S MOTIONS TO SUPPRESS, FOR A BILL OF PARTICULARS AND FOR CERTAIN PRETRIAL DISCOVERY

McMahon, J.:

On October 4, 2004, a grand jury returned a three-count indictment charging Warren J. Schwartz with: (1) publishing a notice or advertisement for child pornography, in violation of Title 18, United States Code, Section 2251(d); (2) transportation of child pornography in interstate commerce, in violation of Title 18, United States Code, Section 2252A(a)(1), and; possession of child pornography, in violation of Title 18, United States Code, Section 2252A(a)(5)(B).

Defendant has filed a motion seeking the suppression of all evidence discovered as a result of the search of his apartment on July 16, 2004. Although the defendant acknowledges that the agents had a warrant to search his apartment, he alleges the fruits of the search should be suppressed because the warrant did not authorize a "nighttime" search. He claims that the agents began the search shortly before 6 a.m., which made the search a "nighttime search."

Defendant also seeks orders directing the Government to: provide a bill of particulars (including any evidence the Government intends to offer pursuant to Rule 404(b) of the Federal Rules of Evidence); disclose material pursuant to Title 18, United States Code, Section 3500 at least

three days prior to trial; and preserve notes, reports, tapes, and computer hardware.

The Government has filed opposition papers asking the Court to deny defendant's motions without a hearing.

BACKGROUND

The following represents the Government's synopsis of events leading to the instant indictment. According to the Government, this case began with an undercover operation in Rockland County, New York. On or about June 12, 2004, a detective of the Rockland County Sheriff's Office acting in an undercover capacity (the "UC") entered an Internet chat room called "#100%PreTeenGirlSexPics." There, the UC read an advertisement from a person using the nickname "maddno." The advertisement offered "preteen girls/boys vids" in exchange for other such videos, and indicated that the videos available for trading were contained in a file server. Following the advertisement's instructions, the UC then accessed the "maddno" file server.

Reviewing statistics maintained by the file server, the UC learned, among other things, that the file server had 325 files (totaling 11.6 gigabytes of data) available for distribution and that it had been visited at least 125 times by people from at least 11 different countries. The UC also learned that the file server was organized into two directories – "boys" and "girls." The UC reviewed the files contained in the "girls" directory, many of which carried names either suggesting, or explicitly stating, that they contained child pornography, including, for example, files named "10_yr_daughter_bang.mpg," "13yo lolita rape a.mpg," and "vicky_10_yr_old_orgasm.mpg." The UC then downloaded from the file server a file named "preteen_-_blondie_rape.mpg." The video file depicts a naked prepubescent girl being tied-up on a bed in a sadomasochistic fashion.

Through information obtained from databases and an Internet Service Provider, law

enforcement officers were able to determine that the Internet Protocol address associated with "maddno" was assigned to Warren Schwartz at 710 Warburton Avenue, Apartment 2J, in Yonkers, New York. On the morning of July 16, 2004, after issuance of a search warrant by the Honorable Lisa Margaret Smith, federal law enforcement agents searched that address. During the search, defendant admitted, among other things, that he used the screen name "maddno," that he operated a file server on his computer, that he liked to see images of girls between the ages of twelve and eighteen years old, and that he worked as a school bus driver. In his apartment, the agents found and seized several computers, which were later determined to contain between 10,000 and 15,000 picture and video files containing images of child pornography, including many images of prepubescent minors and many images depicting sadistic or masochistic conduct. The computers also contained approximately nine encrypted directories, containing in excess of 60 gigabytes of data, but defendant refused to give the agents the password to access them.

Sometime later on July 16, 2004, Schwartz was arrested and charged in a criminal complaint with advertisement of child pornography. Defendant was subsequently indicted on the current charges. (G. Memo at 2-4).

## MOTION TO SUPPRESS

Defendant seeks to suppress all evidence discovered as a result of the search of his apartment on July 16, 2004. Defendant alleges that the agents executing the warrant began their search shortly before 6:00 a.m. – most likely at or about 5:30 a.m., when defendant allegedly called his employers to notify them he would not be going to work that day. (Def. Aff. ¶ 9). Because the warrant authorized a search only during daytime, and Rule 41(a)(2)(B) of the Federal Rules of Criminal Procedure defines "daytime" to mean the hours between 6:00 a.m. and 10:00 p.m., defendant argues

that suppression is warranted. (Def. Motion No. 1, at 1-2).

The Government does not concede the truth of defendant's affidavit and says that it would be prepared to show at an evidentiary hearing that the search did not actually commence until after 6:00a.m. However, the Government argues that even if the Court were to credit defendant's affidavit as true – obviating the need for a hearing to resolve factual disputes – the motion should be denied. For the reasons set forth in the Government's memorandum of law and below, defendant's motion to suppress is denied.

A. <u>Legal Principles</u>

The Fourth Amendment protects people from "unreasonable searches." U.S. Const. amend. IV. In part to effectuate this mandate, Rule 41 of the Federal Rules of Criminal Procedure sets forth procedural rules to be followed in issuing and executing federal search warrants. Among its requirements, Rule 41(e)(2)(B) specifies that agents must execute a search warrant during the daytime – defined by Rule 41(a)(2)(B) to mean "the hours between 6:00 a.m. and 10:00 p.m." – unless the issuing judge "for good cause expressly authorizes execution at another time." This rule, the Second Circuit has explained, guards against the "peculiar abrasiveness of official intrusions" at night. *United States v. Ravich*, 421 F.2d 1196, 1201 (2d Cir. 1970) (Friendly, J.) (citing *Jones v. United States*, 357 U.S. 493 (1958)).

Although a violation of the Fourth Amendment justifies suppression of evidence in most instances, it is well settled that a violation of Rule 41 does not necessarily call for such an extreme remedy. Indeed, in the leading case of *United States v. Burke*, 517 F.2d 377, 386 (2d Cir. 1975) (Friendly, J.), the Second Circuit held that "courts should be wary in extending the exclusionary rule in search and seizure cases to violations [of Rule 41] which are not of constitutional magnitude."

Violations of Rule 41, the Court ruled, should not lead to exclusion "unless (1) there was 'prejudice' in the sense that the search might not have occurred or would not have been so abrasive if the Rule had been followed or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule." *Burke*, 517 F.2d at 386-87 (footnotes omitted); *see United States v. Schoenheit*, 856 F.2d 74, 76-77 (8th Cir. 1988) (adopting the prejudicial error test from *Burke*); *United States v. Twenty-Two Thousand, Two Hundred Eighty Seven Dollars ($22,287.00), United States Currency*, 709 F.2d 442, 448 (6th Cir. 1983) (same); *United States v. Searp*, 586 F.2d 1117, 1125 (6th Cir. 1978) (same).

Applying the Second Circuit's prejudicial error test, courts have routinely denied motions to suppress where, as alleged here, agents executed a daytime search warrant slightly outside the window allowed for "daytime" searches. *See, e.g.*, *Schoenheit*, 856 F.2d at 76-77; *$22,287.00*, 709 F.2d at 448; *Searp*, 586 F.2d at 1125; *accord United States v. Koller*, 559 F. Supp. 539, 540-41 (E.D. Ark. 1983) (reaching the same result applying an analogous test); *Brothers v. State*, 261 Ark. 64, 67 (1977) (same); *see also Ravich*, 421 F.2d at 1201 (applying Rule 52's "substantial rights" test to reject suppression of evidence seized during an unauthorized nighttime search). As these courts have reasoned, "When there has merely been a violation of the procedural rules governing night searches, suppression, with its attendant potential for a miscarriage of justice, is not justified when there was neither a possibility of bad faith conduct on the part of the police, nor prejudice to the defendant (in the sense that the search might not have occurred or would not have been so abusive . . . )." *Searp*, 586 F.2d at 1125.

As these cases make clear, courts have not treated nighttime searches pursuant to search warrants lacking proper authorization as "warrantless" searches for Fourth Amendment purposes. Thus, defendant's reliance on *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973), and other cases

addressing the validity of consents to search, is misplaced.

The only case found where a court suppressed evidence based on an unauthorized nighttime search is *Harris v. Arkansas*, 572 S.W.2d 389 (Ark. 1978). However, in that case the unauthorized nighttime intrusion was only one of several "omissions, errors and deficiencies" in the warrant and search. *Id.* at 394. Applying state law, the Arkansas Supreme Court concluded that suppression was justified by "the almost total disregard of the Rules," *id.* at 395, and implied strongly that suppression would not have followed from a violation of the nighttime search rules alone, *see id.* Indeed, only one year earlier, the same court had rejected suppression based on an alleged violation of the Arkansas nighttime search rules alone. *See Brothers v. State*, 261 Ark. 64, 67-68 (1977).

More representative of the way court's have dealt with de minimus violations of the nighttime search rules is the Eighth Circuit's decision in *Schoenheit*, 856 F.2d 74. In that case the Court held that suppression was unjustified where agents initiated a search at 10:30 p.m., 30 minutes beyond the 6 a.m. to 10:00 p.m. window for a daytime search. The Court ruled that the search violated Rule 41 because the government lacked reasonable cause to execute the warrant at nighttime. Nevertheless, applying the *Burke* test, the Court concluded that suppression was unwarranted, since, among other things, the defendant "was not awakened in the middle of the night while in bed, and he answered the door on his own volition." 856 F.2d at 77. Accordingly, "there was no showing that the search would have been less abrasive had it occurred before 10:00 p.m." *Id.*; *see also Searp*, 586 F.2d at 1122 (denying suppression of a search conducted after midnight in part because "the protection Rule 41(c) provides against frightening surprise searches" was inapplicable where the homeowner was aware that the police were coming to search her house); *Koller*, 559 F. Supp. at 541 (similar).

B. Discussion

As an initial matter, there is no allegation that the agents who executed the search warrant did so with "intentional and deliberate disregard of" the nighttime search provisions in Rule 41. *Burke*, 517 F.2d at 386. To the contrary, one can infer from defendant's affidavit that the agents began the search before 6:00 a.m. (if they did) only because they unexpectedly encountered defendant outside his residence walking his dog. There is no suggestion that the agents went to the residence intending to begin the search before 6 a.m.

In addition, defendant has not, and cannot, show "prejudice" in either of the senses defined by the *Burke* Court. First, there is no dispute that the search would have occurred if the agents had waited a few minutes until 6 a.m. That is, defendant does not contend that the search warrant was invalid on its face. Thus, had the agents, noting the time, maintained a vigil over the apartment for 30 minutes or so, there is no dispute that they would have had authority to search the apartment. *Cf. Ravich*, 421 F.2d at 1201 ("All would have been well if the officers, noting the omission in the warrants, had required the . . . policemen to maintain their vigil until the sun rose . . . .").

Second, just as in *Schoenheit* and *$22,287.00*, defendant has made "no showing that the search would have been less abrasive had it occurred" after 6:00 a.m. *Schoenheit*, 856 F.2d at 77; *accord $22,287.00*, 709 F.2d at 449. Indeed, by defendant's own admission, he was awake and outside walking his dog when the agents encountered him. (Def. Aff. ¶ 4). At this point, sometime between 5:00 and 5:35 a.m., he learned that the agents had a search warrant and intended to search his house. (*Id.* ¶¶ 5-6). He then accompanied them to his residence, where he himself opened the door with his keys. (*Id.* ¶ 8). Only then did the agents begin conducting the search.

Given these alleged facts, the rationale for the special rules governing nighttime searches is,

as it was in *Ravich*, "wholly inapplicable" in this case. 421 F.2d at 1201. The search took place near enough to the 6:00 a.m. threshold for a daytime search "as to make the infraction *de minimus*." *$22,287.00*, 709 F.2d at 449. Moreover, defendant was "not awakened in the middle of the night while in bed." *Schoenheit*, 856 F.2d at 77. And, insofar as he knew the agents' purpose (and authority) before they set foot inside his house, there was no "surprise intrusion into defendant's privacy." *Koller*, 559 F. Supp. at 541; *see also Searp*, 586 F.2d at 1122. In short, "the record does not reflect that the search . . . was in any sense 'abrasive' except to the extent that any search that turns up [contraband] is 'abrasive.'" *$22,287.00*, 709 F.2d at 449. The fact that defendant was allegedly "extremely confused and frightened" during the search, (Def. Aff. ¶ 10), is of no moment. Defendant does not contend that he was *more* confused and frightened because the search allegedly began shortly before 6:00 a.m. than he would have been had the agents delayed by 30 minutes or so.

If anything, the basis for suppression in this case is even weaker than it was in *Schoenheit*, for at least two reasons. First, putting aside Rule 41's technical definition of "nighttime," the search in this case took place when, in fact, it was reasonably light outside. *See* 2004 U.S. Naval Observatory Records for Sunrise and Sunset, for Yonkers, New York (G. Memo, Exhibit A) (showing sunrise on July 16, 2004, was at 5:38 a.m.).[1] In *Schoenheit*, by contrast, the search took place in the actual dark. *Compare* 856 F.2d at 77 (noting that the search took place in Platte County, Missouri, on November 7, 1986, at 10:30 p.m.), *with* 1986 U.S. Naval Observatory Records for

---

[1] The Court may take judicial notice of the times of sunrise and sunset, since they are facts "not subject to reasonable dispute in that [they are] . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *see also Brathwaite v. Manson*, 527 F.2d 363, 371 (2d Cir. 1975), *rev'd on other grounds*, 432 U.S. 98 (1977).

Sunrise and Sunset, for Kansas City, Missouri (G. Memo, Exhibit B) (showing sunset in Platte County, Missouri, on November 7, 1986, was at 5:11 p.m.). Thus, the search in that case was substantially closer to the "nighttime intrusion into a private home" against which the Fourth Amendment, and by extension Rule 41(e)(2)(B), was intended to guard. *Jones*, 357 U.S. at 498. Even accepting defendant's version of events, the search in this case was a "nighttime" search in name only.

Second, the invasion of privacy in this case, if any, was much slighter by virtue of the fact that defendant was outside of his home when he encountered the agents and learned of their authority to search his home. In *Schoenheit*, by contrast, the defendant was inside his house when it was surrounded by law enforcement agents. After an initial announcement of their presence failed to get a response, "[o]ther law enforcement officers were then summoned to the house in the hopes that their vehicle headlights would rouse the occupants inside the house." 856 F.2d at 75. "Stirred by the headlights," the defendant finally emerged from the house at or about 10:15 p.m., after which the search was started. *Id.* Thus, again, the search in *Schoenheit* was much closer than the search in this case to the "frightening surprise search[]" that Rule 41 was designed to prevent. *Searp*, 586 F.2d at 1122.

Therefore, even assuming defendant's version of events, the agents here committed a technical violation of Rule 41, with no real prejudice to defendant. Suppression, under such circumstances, "would be a remedy out of all proportion to the benefits gained." *Searp*, 586 F.2d at 1123.

Accordingly, defendant's motion to suppress is denied.

<u>DISCOVERY-RELATED MOTIONS</u>

Defendant seeks orders directing the Government to: provide a bill of particulars (including any evidence the Government intends to offer pursuant to Rule 404(b) of the Federal Rules of Evidence); disclose material pursuant to Title 18, United States Code, Section 3500 at least three days prior to trial; and preserve notes, reports, tapes, and computer hardware

Bill of Particulars

A bill of particulars is required only where the indictment is so general that it does not advise the defendant of the specific acts of which he is accused. *United States* v. *Torres*, 901 F.2d 205, 234 (2d Cir. 1990) (citations omitted); *United States* v. *Gibson*, 175 F.Supp.2d 532, 536 (S.D.N.Y. 2001) ("[A] bill of particulars is not a matter of right"). A motion for a bill of particulars should be granted only where necessary (1) to inform the accused of the charge against him with sufficient precision to enable him to prepare his defense and avoid surprise; and (2) to enable the accused to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense. *See Wong Tai* v. *United States*, 273 U.S. 77, 82 (1927); *United States* v. *Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987).

In addition, if the information sought by a defendant is provided in the indictment or through some other means, a bill of particulars is not necessary. *See Bortnovsky*, 820 F.2d at 574. "It is not enough that the information would be useful to the defendant; if the defendant has been given adequate notice of the charges against him, the government is not required to disclose additional details about its case." *United States* v. *Payden*, 613 F. Supp. 800, 816 (S.D.N.Y. 1985). Further, supplying evidentiary detail is not the function of the bill of particulars. *See Torres*, 901 F.2d at 234. "A bill of particulars is not a general investigative tool, a discovery device or a means to compel the government to disclose evidence or witnesses to be offered prior to trial." *Gibson*, 175 F.Supp.2d

at 537; *United States* v. *Strawberry*, 892 F. Supp. 519, 526 (S.D.N.Y. 1995). If the information sought by a defendant is provided in the indictment or through some other means, a bill of particulars is not necessary. *See Bortnovsky*, 820 F.2d at 574.

A bill of particulars should not be required in order to detail the "wheres, whens, and with whoms" of the crime charged. *See United States* v. *Jimenez*, 824 F. Supp. 351, 363 (S.D.N.Y. 1993) (Government may not be compelled to provide a preview of its evidence; motions for "whens," "wheres" and "with whoms" are routinely denied). Moreover, it is not the function of a bill of particulars to allow defendants to preview the evidence or theory of the government's case. *United States* v. *Taylor*, 707 F. Supp. 696, 699 (S.D.N.Y. 1989) (citations omitted); *United States* v. *Persico*, 621 F. Supp. 842, 868 (S.D.N.Y. 1985).

In the present case, the criminal complaint, the indictment itself, and the 406 pages of discovery that the Government represents that it has previously disclosed (G. Memo at 15), provide more than sufficient information to inform defendant of the specific acts of which he is accused. According to the Government these documents include materials such as, extensive computer logs, detailing the advertisement defendant is alleged to have published, the UC's access of the "maddno" file server on June 12, 2004, and the UC's download of a file named "preteen_-_blondie_rape.mpg." The Government also represents that it has provided the defense with a 167-page report on the forensic examination of the computers seized from defendant's residence on July 16, 2004, the computers that contained child pornography. This information is more than sufficient to enable defendant to prepare his defense, to avoid unfair surprise at trial, and to preclude a second prosecution for the same offenses. *See, e.g., Wong Tai*, 273 U.S. at 82; *Bortnovsky*, 820 F.2d at 574.

Accordingly, defendant's request for an order compelling the Government to provide a bill of particulars is denied.

404(b) Evidence/ Jencks Act/ Brady

To the extent defendant's motion requests immediate disclosure by the Government of evidence it intends to offer pursuant to Rule 404(b) of the Federal Rules of Evidence, that motion is denied. The Government proposes that it provide notice of Rule 404(b) evidence "two calendar weeks" before trial and that is acceptable to the Court. Accordingly, the Government is directed to notify defendant at least two weeks prior to the trial, of the general nature of any evidence of this type it intends to introduce at trial. *See e.g. United States v. Gutierrez-Flores*, No. 94 Cr. 393, 1994 WL 558034, at *4 (S.D.N.Y. October 11, 1994) (directing government "to comply with mandate of Rule 404(b) by providing . . . notice within 10 days before trial").

Following the custom in this District with respect to all *Giglio* and 3500 material, the Court directs that the defendant be provided with this material at least three days prior to trial. Earlier, of course, would be better. The Government should also be mindful of this Court's views concerning the seriousness of the Governments *Brady* obligations. *United States v. St. Germain*, 2004 WL 1171403, S.D.N.Y., May 11, 2004.

Motion for Preservation of Notes, Tapes, and Computers

Finally, defendant moves for an order directing the Government to preserve all notes, reports, tapes, and computer hardware. The Government represents that it will continue to preserve any such materials in this case, and produce them to the defense if or when required by law. (G. Memo at 18). Accordingly, no order is necessary. *See, e.g., United States v. Mercado*, No. S1 02 Cr. 675 (WHP), 2003 WL 21756084, at *6 (S.D.N.Y. July 30, 2003); *United States v. Richards*, 94 F. Supp. 2d 304,

This constitutes the decision and order of the Court.

July 14, 2005

[signature]

U.S.D.J.

BY HAND TO:

Jesse M. Furman
Assistant United States Attorney


José A. Muñiz, Esq.
Law Office of José A. Muñiz, P.C.
305 Broadway, Suite 200
New York, NY 10007